UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| UNITED STATES OF AMERICA | : | |
| --- | --- | --- |
| | : | |
| | : | Case Nos. 20-CR-54-2 (ABJ) |
| v. | : | 22-CR-277   (ABJ) |
| | : | |
| GREGORY WILLIAMS, | : | |
| Defendant. | : | |
| | : | |

**GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits its Memorandum in Aid of Sentencing. For the reasons set forth below, the United States requests that the Court sentence the defendant to 46 months' incarceration on case 20-CR-54-2 (ABJ) to be followed by four years of supervised release and 11 months' incarceration on 22-CR-277 (ABJ), to be followed by three years of supervised release, as well as the recommended programming. These sentences should run consecutively, for a total of 57 months' incarceration. In support of these sentences, the Government states the following.

**FACTUAL AND PROCEDURAL BACKGROUND**

*Case 20-CR-54-2 (ABJ)*

The case arose from a search warrant that was executed on February 13, 2020, at 3137 Buena Vista Terrace Southeast, Apartment 1, in Washington, D.C. Defendant Williams was arrested and initially charged in D.C. Superior Court. He then appeared before this Court, having been charged by indictment with five counts stemming from the facts of his February 13, 2020 arrest – Unlawful Possession with Intent to Distribute 28 grams or more of Cocaine Base, in violation of 21 U.S.C. § 841(a)(1) and 841 (b)(1)(B)(iii), Unlawful Possession with Intent to

1

Distribute Cocaine, in violation of 21 U.S.C. § 841(a)(1) and 841(b)(1)(C), Unlawful Possession With Intent to Distribute a Detectable Amount of Phencyclidine, in violation of 21 U.S.C. § 841(a)(1) and 841(b)(1)(C), Unlawful Possession with Intent to Distribute Marijuana, in violation of 21 U.S.C. § 841(a)(1) and 841(b)(1)(D), and Possession of a Firearm During a Drug Trafficking Offense, in violation of 18 U.S.C. § 924(c)(1). He was then charged by Superseding Indictment on March 1, 2022 with one additional count, Conspiracy to Distribute and Possess with Intent to Distribute 28 Grams or More of Cocaine Base, Cocaine, Phencyclidine, and Marijuana.

On March 2, 2022, he pleaded guilty to Unlawful Possession with Intent to Distribute Cocaine Base, the lesser included offense of Count Five of the Superseding Indictment, charging him with Unlawful Possession with Intent to Distribute More Than 28 Grams of Cocaine Base, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(B)(iii).

The underlying facts of the offense are detailed below.

At all times relevant to the indictment, Gregory Williams and defendants 1, 3, and 4 possessed controlled substances – primarily cocaine base, cocaine, heroin, phencyclidine, and marijuana – with the intent to distribute them at and in the vicinity of 3137 Buena Vista Terrace S.E., Washington, D.C. Specifically, Mr. Williams worked for this operation and defendants 1, 3, and 4, where he assisted in the sale of narcotics by bringing the product to buyers and bringing money back to the other sellers.

On February 13, 2020, members of the Metropolitan Police Department Gun Recovery Unit and the Drug Enforcement Agency ("DEA") task force executed a search warrant at 3137 Buena Vista Terrace S.E., Apt. 1, Washington, D.C. Officers knocked on the door and announced their presence. After waiting a reasonable amount of time, officers entered the apartment by way of a battering ram. Officers observed defendants 1, 3, and 4 inside the location along with

Defendant Williams, who was found inside of the bathroom. When defendant Williams was found, the toilet appeared to have been recently flushed.

At the time of the execution of the search warrant, officers determined that there was a drug operation taking place. The apartment was a small 2-bedroom unit with one bathroom and a galley style kitchen. Inside of the kitchen, officers recovered a backpack with three firearms, 45 grams of crack/cocaine, 300 grams of a white powder substance (field test positive for cocaine), 3 grams of a tan powder substance (field tested positive for heroin), 170 grams of rock like substance, digital scales, multiple cell phones, Pyrex bowls with white powder residue, and large amounts of cash.

In a room labeled by law enforcement as "bedroom 1," officers found large amounts of currency, empty PCP vials and containers, multiple pieces of kilo presses, 737 grams of marijuana with packaging, 130 grams of white rock like substance which field tested positive for cocaine, drug paraphernalia such as plastic baggies, masks, and a shifter), and another firearm. In a room labeled by law enforcement as "bedroom 2," officers found 12 half ounce vials of PCP, three 8-ounce bottles of PCP, ammunition, gun magazines, and arrest paperwork from a November 2019 court case bearing defendant Williams' name. In total, officers recovered over $32,000 cash from the premises and a conservative estimate of over $100,000 worth of illegal narcotics.

Mr. Williams acknowledged that he is accountable for at least 298.525 grams of cocaine base, also known as crack cocaine, constructively possessed the narcotics at issue, with the intent to assist in the distribution of such product. He also acknowledged that 569.221 grams of cocaine hydrochloride (powder), 769.5 grams of phencyclidine (PCP), 1.011 kilograms of marijuana, 19.18 grams of fentanyl, and 15.46 grams of heroin were discovered in the apartment at the time of the search warrant execution.

### *Case 22-CR-277 (ABJ)*

This case arose from a search warrant that was executed on April 27, 2022, at 3137 Buena Vista Terrace Southeast, Apartment 4, in Washington, D.C. Though the defendant was not the target of the search warrant, he lived at the location and a firearm and other narcotics paraphernalia, to include digital scales, were recovered from his bedroom. He was not present when the search warrant was executed.

The fact of the April 27, 2022 search warrant execution was brought to this Court's attention, and, on May 18, 2022, Mr. Williams' release in case 20-CR-54-2 (ABJ) was revoked. He was ordered to self-surrender to the D.C. Department of Corrections, which he did. On September 9, 2022, he pleaded guilty to a one-count Information, charging him with Unlawful Possession of a Firearm by a Person Under Indictment for a Crime Punishable by Imprisonment for a Term Exceeding One Year, in violation of 18 U.S.C. § 922(n).

The underlying facts of the offense are detailed below.

On Wednesday, April 27, 2022, at approximately 6:25 hours, members of the VCIT unit along with members of the DEA task force executed a D.C. Superior Court Search Warrant (2022 CSWSLD 001340), at 3117 Buena Vista Terrace S.E., Washington, D.C., Apt #4. Sergeant Jacquez knocked on the front door while yelling "police, search warrant." When the occupants did not answer, members of law enforcement were able to gain entry by use of a battering ram.

During the search of bedroom 2, law enforcement recovered a black in color revolver handgun inside of a bag of clothing. Nearby in the same bedroom, officers found a gun cleaning kit, a belly holster, a magazine to a semi-automatic pistol, and a round of ammunition. Officers also found paperwork in the name of Gregory Williams, and numerous cell phones. Gregory Williams was not present at the time the search warrant was executed. However, Mr. Williams

4

was on release pending sentencing in a District Court case and was required to wear a GPS monitor at the time of the search. Mr. Williams had the location listed as his home address with the Pretrial Services Agency for the District of Columbia. According to records from his GPS monitor, Mr. Williams had been reporting to that address nightly in compliance with his curfew. Additionally, GPS data showed that he left the location shortly before police arrived to execute the search warrant. Finally, the apartment in question was a two-bedroom apartment. Officers found a male and female sleeping inside of bedroom 1 at the time of the search.

DNA testing from the revolver revealed that male and female DNA were present, and the DNA was interpreted as originating from four individuals. The DNA results from the revolver are 660,000 times more likely if Gregory Williams and three unknown, unrelated individuals are contributors than if four unknown, unrelated people are.

Gregory Williams knowingly possessed the revolver and, at the time he possessed it, he knew that he was under Indictment in U.S. District Court Case Number 20-CR-54-2 (ABJ). The firearm possessed by Mr. Williams had traveled in interstate commerce before he possessed it.

## DISCUSSION AND RECOMMENDATION

### I. Generally Applicable Legal Principles

When determining the appropriate sentence, the District Court should consider all of the applicable factors set forth in 18 U.S.C. § 3553(a). *See United States v. Gall*, 128 S. Ct. 586, 596 (2007). The listed factors in 18 U.S.C. § 3553(a) include the following:

(1)   the nature and circumstances of the offense and the history and characteristics of the defendant;

(2)   the need for the sentence imposed—

(A)     to reflect the seriousness of the offense, to promote respect for the law, and
                       to provide just punishment for the offense;

               (B)     to afford adequate deterrence to criminal conduct;

               (C)     to protect the public from further crimes of the defendant; and

               (D)     to provide the defendant with needed educational or vocational training,
                       medical care, or other correctional treatment in the most effective manner;

       (3)     the kinds of sentences available;

       (4)     the kinds of sentence and the sentencing range established for—

               (A)     the applicable category of offense committed by the applicable category of
                       defendant as set forth in the guidelines—

                       (I)     issued by the Sentencing Commission….; and

                       (II)    that, . . . are in effect on the date the defendant is sentenced; …

       (5)     any pertinent policy statement—

               (A)     issued by the Sentencing Commission … and

               (B)     that, . . . is in effect on the date the defendant is sentenced.

       (6)     the need to avoid unwarranted sentence disparities among defendants with similar
               records who have been found guilty of similar conduct; and

       (7)     the need to provide restitution to any victims of the offense.

The amount of contraband recovered in case 20-CR-54-2 (ABJ) suggests that a large-scale narcotics trafficking operation was underway. Although the facts are highly concerning, the defendant was the first of the four charged defendants to accept responsibility prior to trial, thus allowing the Government and its witnesses to devote resources to other investigations. Additionally, the evidence in 20-CR-54-2 (ABJ) suggested that the defendant played a less

6

significant role in the drug trafficking organization than the others – that of a runner. Additionally, the defendant is 60 years old and his pleas of guilty in these cases will result in his only significant sentence of incarceration to date, a period the Government believes is appropriate given his relative conduct.

II.     **Defendant's Sentencing Guidelines Calculation**

   A.     **Total Offense Level**

The parties disagree with U.S. Probation on the following enhancements: 1) a 3-point increase on Count Group 2 (Count 1 of 22-CR-277 (ABJ)) under U.S.S.G. §3C1.3 and 18 U.S.C. § 3147; 2) the applicability of the Minimal Participant Reduction pursuant to U.S.S.G. § 3B1.2(a); and 3) Acceptance of Responsibility under U.S.S.G. § 3E1.1. This memorandum will briefly address each in turn.

As to the 3-point increase on Count Group 2 (Count 1 of 22-CR-277 (ABJ)) under U.S.S.G. §3C1.3 and 18 U.S.C. § 3147, the Government declined to apply it. An enhancement pursuant to § 3142 requires notice, which the Government did not provide. *See United States v. Cooper*, 827 F.2d 991, 994 (4th Cir. 1987) (finding § 3147 inapplicable where notice was not provided to the defendant). Thus, it is the Government's position that its application here would be improper.

As to the applicability of the Minimal Participant Reduction pursuant to U.S.S.G. § 3B1.2(a), the Government believes the defendant's role in the conspiracy was that of a minimal participant and the discount should apply. Throughout the pendency of case 20-CR-54-2 (ABJ), the Government reviewed a large amount of evidence, including full phone extractions from six of the cell phones recovered during the warrant execution. The defendant's role as a runner – someone who carried drugs and other substances from seller to purchaser and did other errands for the members of the group – was clear from the extractions. Mr. Williams' co-defendants

7

involvement was substantially greater than his. Additionally, the defendant had no money on his person when he was arrested in the location while his co-defendants had large amounts of cash, further supporting the Government's assessment of his role.

As to Acceptance of Responsibility under U.S.S.G. § 3E1.1, the Government believes the defendant has accepted responsibility and a 3-point decrease is warranted. In 20-CR-54-2 (ABJ), the defendant was the first charged defendant to accept responsibility. Of the co-defendants who have been sentenced, both were given this benefit under U.S.S.G. 3E1.1. In case 22-CR-277 (ABJ), the defendant agreed to enter into a guilty plea prior to being formally charged, resulting in a plea to an Information at his first status hearing on the case.

In sum, the defendant's Base Offense Level is 30 in 20-CR-54-2 (ABJ) and 14 in 22-CR-277 (ABJ). All parties agree that his Combined Adjusted Offense Level is 30. The Government believes his total offense level, applying the discounts for being a minimal participant and acceptance of responsibility, should be 23.

**B.     Criminal History Category**

The PSR writer calculates the defendant to have a total of 0 criminal history point, placing him in Criminal History Category I. *See* PSR ¶ 71. The Government concurs.

**C.     Sentencing Guideline Range**

Based on a Total Offense Level of 23 and Estimated Criminal History Category, the defendant's estimated Sentencing Guidelines range is 46 - 57 months. Should the Court impose a fine, the applicable range is $20,000 to $200,000 pursuant to U.S.S.G. § 5E1.2. The defendant has also agreed to forfeiture, as outlined in the plea agreements.

**III.     Sentencing Recommendation**

As stated above, the Government requests that the Court impose a sentence of 46 months' incarceration on 20-CR-54-2 (ABJ) incarceration followed by four years of supervised release and 11 months' incarceration on 22-CR-277 (ABJ) followed by three years of supervised release. These sentences reflect the seriousness of the offenses while considering the defendant's relatively limited criminal history and willingness to accept responsibility, thus providing just punishment. The relevant factors pursuant to 18 U.S.C. § 3553(a) guide this analysis.

    **A.     The Nature of the Offense**

On February 13, 2020, the defendant was found in an apartment that had over $100,000 worth of narcotics in it. As the Statement of Offense details, the narcotics included crack/cocaine (cocaine base), PCP, heroin, cocaine, marijuana, and more. Further, the apartment was full of drug manufacturing and distribution equipment, to include multiple kilo presses, Pyrex bowls, baggies, sifters, masks, and gloves. Evidence from a "trap phone" – a phone found inside of the apartment which was used exclusively to facilitate the sale of narcotics – demonstrated that potential buyers of narcotics were communicating with individuals inside of the apartment up until police arrived to execute the warrant. Additionally, as noted in the Government's prior filings, officers who executed the warrant believed that the occupants of the apartment were actively cooking crack/cocaine based on a pan with residue which was on the stove at the time officers entered as well as pieces of crack/cocaine which were laid out to dry next to a fan in bedroom 1.

Similarly, the apartment in case 22-CR-277 (ABJ) appeared to be one from which drugs were sold. Officers recovered cocaine base, fentanyl, and drug distribution material. In defendant Williams' bedroom specifically, officers recovered digital scales, consistent with those used to facilitate drug sales and the revolver which is the subject of the Information.

9

### B.     The History and Characteristics of the Defendant

While the defendant's criminal history is dated, it is highly concerning that he possessed a firearm while he had pending charges in a serious drug case. Notably, in case 22-CR-277 (ABJ), GPS data from pretrial services showed that defendant Williams was reporting nightly to the address of the warrant execution and had, in fact, just left the home minutes before officers arrived to execute the warrant. It is telling, then, that officers found contraband in plain view as well as a gun in defendant Williams' room. Given the seriousness of the allegations in both cases and the fact that they occurred so close to one another, with the latter being while the defendant was under this Court's supervision, the Government believes a significant period of incarceration must be imposed. Sentencing the defendant to 46 months' incarceration on 20-CR-54-2 (ABJ) and 14 months' incarceration on 22-CR-277 (ABJ) will serve this purpose.

### C.     The Need for the Sentence Imposed

Given the defendant's decision to accept responsibility in both cases, the Government believes its requested sentence is appropriate. While the evidence in case 20-CR-54-2 (ABJ) supported the charges against defendant Williams, it also revealed that he played a more minor role than his co-defendants. The evidence supported that Jermaine Campbell was the individual actively in contact with large-scale narcotics traffickers and the one who arranged for the import of these substances to the Washington, D.C. area and that Roland Howard and Antonio Lovelace – who each received 60 months' incarceration – were actively involved in the sale of narcotics. Gregory Williams, while fully involved in the conspiracy, played a more minor role according to the evidence available to the Government. A sentence of 46 months is in line with the Government's recommendation in the plea agreement and commensurate with the defendant's conduct.

In 22-CR-277 (ABJ), defendant Williams was connected to the firearm not only because it was found in his bedroom, but the DNA evidence supports that it was his. This offense is a serious one, and therefore the Government is requesting an additional period of incarceration to account for it. A sentence of 11 months' incarceration is appropriate given his conduct.

        Respectfully submitted,

        MATTHEW M. GRAVES
        UNITED STATES ATTORNEY
        D.C. Bar Number 481052

By:   */s/ Meredith E. Mayer-Dempsey*
       MEREDITH E. MAYER-DEMPSEY
       N.Y. Attorney No. 5213202
       MADHU CHUGH
       D.C. Bar No. 992122
       Assistant United States Attorneys
       Federal Major Crimes Section
       555 4th Street, N.W.
       Washington, D.C. 20530
       (202) 815-4063
       Meredith.Mayer-Dempsey@usdoj.gov